United States District Court
District of Massachusetts

|                                |   |                    |
|--------------------------------|---|--------------------|
| Kenneth Alan San Antonio, Jr., | ) |                    |
|     Plaintiff,                 | ) |                    |
|         v.                     | ) | Civil Action No.   |
|                                | ) | 18-11639-NMG       |
| Commissioner Andrew M. Saul,   | ) |                    |
|     Defendant.                 | ) |                    |

**MEMORANDUM & ORDER**

**GORTON, J.**

Kenneth Alan San Antonio, Jr ("San Antonio" or "plaintiff") seeks judicial review of the denial of his application for disability insurance benefits by Andrew M. Saul ("the Commissioner" or "defendant"), Commissioner of the Social Security Administration ("the SSA").[1]  Pending before the Court are plaintiff's motion for an order reversing the Commissioner's decision (Docket No. 17) and defendant's motion to affirm that decision (Docket No. 21).  For the reasons that follow, plaintiff's motion will be denied and the Commissioner's motion will be allowed.

---

1 The complaint originally named Acting Commissioner Nancy Berryhill.  Andrew Saul is now the confirmed Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

-1-

## I. Background

### A. Employment History and Alleged Disability

San Antonio was born in 1980. In 2003, He received his bachelor's degree in science and clinical laboratory sciences from Quinnipiac University. He passed two national board exams to practice as a clinical laboratory technologist and did clinical rotations at Yale Hospital in New Haven, Connecticut. After his graduation from college, plaintiff was employed as a lab technician at several hospitals.

In August, 2012, plaintiff sought treatment for back pain after sustaining an injury while exercising. Following an MRI, he was diagnosed with recurrent disk protrusion and herniation and several other mild to moderate spinal conditions. After two months of shoulder pain, an MRI of San Antonio's right shoulder in January, 2013, revealed findings suggestive of underlying adhesive capsulitis, a condition which can cause pain and loss of range of motion in the shoulder. Plaintiff continued his employment until February, 2013, when his persistent shoulder, neck and back conditions caused him to stop working. That is the alleged onset date for purposes of his application for disability insurance benefits. He has not engaged in any substantial gainful employment since his alleged onset date.

From February, 2013 to July, 2014, plaintiff received Long Term Disability ("LTD") benefits through his employer. In

August, 2014, the insurer determined that San Antonio could return to work and discontinued the payment of benefits. Plaintiff appealed that determination and a subsequent lawsuit was settled in February, 2017. In conjunction with those proceedings the LTD insurer obtained an independent medical examination and San Antonio underwent a disability evaluation.

**B.   Medical Opinions**

Given his several conditions, San Antonio has seen a variety of medical providers and specialists. Summaries of the most relevant medical opinions, including that of Dr. Stephanos Kales, an Independent Medical Examiner ("IME"), follow.

In April 2013, several months after he had stopped working, San Antonio received epidural steroid injections ("ESI"). His pain management doctor, Dr. Stefan Muzin, noted that he was doing "reasonably well" and referred him for physical therapy. In May, 2013, plaintiff informed his primary care doctor, Dr. Johanna Klein, that he was doing well and could complete his activities of daily living ("ADLs"). In March, 2014, San Antonio reported increased low back pain to Dr. Muzin. After an exam, he noted that plaintiff had full range of motion of the cervical and lumbar spine, with discomfort at the end ranges and normal strength in his lower extremities.

After an April, 2014, MRI showed a variety of spinal conditions, Dr. Muzin prescribed the resumption of

anticonvulsant drugs and administered an ESI. Following that treatment San Antonio reported improvement in his symptoms and an ability to exercise. In late 2014, Dr. Klein noted that San Antonio had excellent range of motion ("ROM") in his upper extremities, no specific spinal tenderness and normal gait.

In April, 2015, San Antonio was examined by Dr. Stephanos Kales, the Independent Medical Examiner, in conjunction with the pending LTD benefits litigation. Dr. Kales found that the plaintiff's condition was within normal limits and that his reported disability was out of proportion to the objective findings of the imaging results and physical exam. Specially, the physical exam indicated that plaintiff had 1) a normal gait; 2) slightly decreased cervical spine ROM; 3) no pain upon spine palpation; 4) slightly reduced right shoulder active ROM with normal passive ROM; 5) full sensation except for occasional numbness in right fifth digit while flexing right shoulder; and full strength in all extremities except for slightly reduced right triceps and right grip strength.

In September 2015, plaintiff retained Dr. Walter Panis, a disability evaluator, to conduct an examination in support of his litigation against the LTD insurer. Dr. Panis opined that San Antonio had chronic pain syndrome and concluded that he was disabled for the foreseeable future even for sedentary work. Specifically Dr. Panis reported that plaintiff had 1) mild

decrease in his cervical range of flexion; 2) full active range of motion in his left shoulder but lacked 10 degrees on anterior flexion in his right shoulder; 3) normal upper extremity strength except for his right hand; 4) normal lower extremity strength 5) minimal decrease of sensation in the right arm and leg and 6) normal gait.

In January 2016, San Antonio reported that he had been able to exercise and his back and shoulder ROM had improved. In 2016 he reported periods of pain but was generally able to perform light exercise, walk and garden. In December of 2016 an exam revealed that plaintiff had pain-free ROM in his cervical spine.

In January of 2017 San Antonio was evaluated by John Moran, an occupational therapist, who found that he was unable to return to his past work because he could not perform the light physical tasks required.

### C. Application for Disability Insurance Benefits

In July 2015, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 416(i) and 423(d). His application was denied in September, 2015 and, upon reconsideration, further denied in December, 2016. Plaintiff then requested an administrative hearing before an Administrative Law Judge ("ALJ"). Following a hearing, in September, 2017, ALJ Sean Teehan issued an unfavorable decision finding that Plaintiff was

not disabled and denying him SSDI benefits. Plaintiff timely appealed the decision of the ALJ to the Appeals Council which, in June, 2018, denied his request for review, rendering the ALJ's decision the final decision of the Commissioner.

**D.    The ALJ's Decision**

Applying a five-step sequential evaluation process, the ALJ determined that San Antonio is not disabled under Sections 216(i) or 223(d) of the Act. The ALJ relied upon testimony presented at the disability hearing as well as medical reports and opinions from doctors.

As an initial matter, the ALJ determined that plaintiff satisfied the insured status requirements through December 31, 2018, which meant that he had to establish that his disability existed on or before that date to be entitled to disability insurance benefits. See 42 U.S.C. § 423(a)(1)(A), (c)(1).

At step one, the ALJ determined that San Antonio was not engaged in substantial gainful employment and had not been so employed since his alleged onset date of February, 2008.

At step two, the ALJ determined that San Antonio had the following severe impairments: 1) degenerative disc disease of the cervical and lumbar spine, 2) adhesive capsulitis of the right shoulder, 3) asthma, 4) migraine headaches and 5) obesity.

At step three, the ALJ determined that, although plaintiff has severe impairments, none met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

Before proceeding to step four, the ALJ considered San Antonio's residual functional capacity ("RFC"), meaning his ability to perform work activities on a sustained basis despite the limitations resulting from his impairments. The ALJ concluded that San Antonio has the RFC: 1) to lift 15 pounds occasionally and five pounds frequently; 2) to sit for 45 minutes at a time up to six hours and stand or walk for 45 minutes at a time up to two hours, with an option to stand every 45 minutes up to three minutes; 3) occasionally to climb, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes, and scaffolds; 4) occasionally to push and pull with his right upper extremity and left lower extremity; and 5) occasionally to reach overhead with his right upper extremity. The ALJ concluded that plaintiff must avoid concentrated exposure to extreme heat and cold, pulmonary irritants such as dusts, fumes, odors, and gases, unprotected heights, and moving machinery (except that he can drive a motor vehicle), and further avoid moderate exposure to humidity. In determining plaintiff's RFC, the ALJ considered both the objective medical

evidence as well as his subjective complaints regarding the intensity, persistence and limiting effects of his symptoms.

While finding that plaintiff had medically-determinable impairments that limited his ability to work, the ALJ decided that San Antonio's complaints with respect to the intensity, persistence and limiting effects of those symptoms were not consistent with the objective medical evidence and other evidence in the record.  The ALJ thus accorded those subjective statements limited weight and determined that the objective medical evidence of record supported his RFC assessment.

Furthermore, the ALJ found that San Antonio was able to engage in various daily activities that demonstrated a higher degree of functioning than he admitted.  Specifically, he was able to take walks, do light exercise at the gym, do yoga, shovel snow and garden.  The ALJ also noted that San Antonio's treatment has been effective in controlling his symptoms.

The ALJ found that while the plaintiff experienced some physical limitations as a result of his impairments, they do not support a finding of total disability. The ALJ concluded that the overall medical evidence did not support the degree of functional limitation alleged by plaintiff.

At step four, the ALJ determined that San Antonio did not have the RFC to perform his past relevant work as a medical technologist and microbiologist.

At the final step, the ALJ determined that, considering the plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he could perform.  Specifically, the ALJ decided, with the help of a vocational expert, that San Antonio has the RFC to perform the requirements of representative occupations such as surveillance systems monitor, order clerk and table worker. Based on that finding, the ALJ concluded that San Antonio was not under a disability as defined by the Act and thus was ineligible for disability insurance benefits.

**E.    District Court Action and Parties' Arguments**

In August, 2018, San Antonio filed his complaint in this case and shortly thereafter, a motion for an order reversing the Commissioner's decision.  He asserts that the ALJ improperly relied on the opinion of Dr. Kales, the IME, and erred in finding that plaintiff was not disabled.  Plaintiff contends that it was improper for the ALJ to consider evidence from the LTD dispute or to credit Dr. Kales's medical opinions. Moreover, plaintiff maintains that the ALJ's analysis was internally inconsistent because the ALJ credited Dr. Kales opinion (in which Dr. Kales found that he could return to his former work) but found, in step 4, that San Antonio could not return to his past relevant work.  Finally, plaintiff asserts

that the ALJ generally erred in weighing competing medical opinions and by ignoring evidence and misapplying the law.

In response to plaintiff's motion, defendant filed a motion to affirm the Commissioner's decision. The Commissioner maintains that there is substantial evidence to support the ALJ's determination that San Antonio was not disabled. In response to plaintiffs' arguments, defendant rejoins that 1) the ALJ properly considered the medical opinion of Dr. Kales, 2) the ALJ's opinion was not internally inconsistent because the ALJ afforded only partial weight to Dr. Kales's opinion which was supported by substantial evidence, 3) the ALJ properly considered evidence in the record from the LTD dispute but was not bound by any ruling or the settlement in that case and 4) the ALJ properly resolved any conflict in the evidence.

## II. Pending Motions

### A. Legal Standard

The Act gives United States District Courts authority to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). A District Court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Act provides that the findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal

standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). If those criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998).

**B. Application**

After reviewing the record, the Court concludes that the Commissioner's decision is supported by substantial evidence and that the correct legal standard was applied. The ALJ appropriately considered and weighed the medical opinions of Dr. Kales and others in his analysis. As a result, the ALJ properly found that San Antonio is not disabled as defined by the Act during the relevant time period.

As an initial matter, there is nothing in the Commissioner's rulings or regulations that prohibits consideration of medical opinions prepared as part of an LTD dispute. Indeed, the regulations require an ALJ to consider every medical opinion in the record. 20 C.F.R. §404.1527. The fact that Dr. Kales's opinion was prepared in connection with an LTD dispute is irrelevant.

In addition, and contrary to plaintiff's assertions, the ALJ was not bound by the outcome of the LTD dispute because 1) a determination with respect to eligibility for Social Security benefits is within the province of the Commissioner and 2) the LTD insurer did not apply the same standard as is required by the Act. See 20 C.F.R. §§ 404.1504. See also Small v. Califano, 565 F.2d 797, 799 (1st Cir. 1977) (noting that that the fact that determinations of disability were made by a private insurer and Veterans Administration is "not conclusive of disability" under the Act.)

Further, the ALJ's analysis was not internally inconsistent. Although Dr. Kales concluded that Plaintiff could return to work as a medical technologist, the ALJ disagreed and found that plaintiff could not return to his past relevant work at step four. Despite that disagreement, the ALJ afforded Dr. Kales's opinion partial weight. Although San Antonio objects to that determination, his objection is unwarranted. The ALJ was entitled to weigh Dr. Kales's testimony as he saw fit, even though he found that plaintiff's RFC was more limited than Dr. Kales's opinion suggested. See Halla v. Colvin, No. 15-CV-30021-KAR, 2016 WL 234802, at *7 (D. Mass. Jan. 20, 2016) (noting that "[p]laintiff has no basis for an objection to the RFC assessment crafted by the ALJ when it was more conservative

than the recent RFC assessments of nonexamining reviewing physicians on which the ALJ was entitled to rely.")

It is the responsibility of the ALJ to weigh competing medical evidence and resolve any conflicts. See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222. The Court finds that the ALJ considered the opinions of Dr. Panis alongside those of San Antonio's other physicians and came to a reasoned conclusion. Substantial evidence in the record, including both the opinions of Dr. Kales and other medical professionals, supports the ALJ's finding that plaintiff could perform some kinds of work. See Ivins v. Colvin, No. CIV.A. 12-11460-TSH, 2013 WL 6072890, at *7 (D. Mass. Nov. 15, 2013)(noting that "an ALJ is not required to accept a single medical opinion in its entirety, but can piece together the relevant medical facts from the findings and opinions of multiple physicians") (internal quotations omitted).

Moreover, San Antonio's ability to perform significant daily activities, including shoveling snow, gardening, walking and exercising at the gym, demonstrates that he is not totally disabled. See Coskery v. Berryhill, 892 F.3d 1, 7 (1st Cir. 2018) (holding that the ALJ properly considered the plaintiff's ability to engage in daily activities in finding that he was able to perform light work).

In conclusion, the burden is on the plaintiff to present sufficient evidence of how his alleged impairment limits his functional capacity. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); Boulia v. Colvin, Civil Action No. 15-30103-KAR, 2016 WL 38822870, at *2 (D. Mass. July 13, 2016) ("The claimant has the burden of proof through step four of the analysis."); Simons v. Colvin, Civil Action No. 13-11668-MBB, at *19 (D. Mass. July 15, 2015) (collecting cases). San Antonio has proffered no evidence demonstrating greater limitations than those already determined by the ALJ.

Accordingly, the ALJ's determination that San Antonio is not disabled is supported by substantial evidence. The Commissioner's decision will therefore be affirmed.

**ORDER**

For the foregoing reasons,

1) plaintiff's motion for an order reversing the Commissioner's decision (Docket No. 17) is **DENIED** and

2) defendant's motion to affirm the Commissioner's decision (Docket No. 21) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 3, 2020